EDWARD J. MORRIS et al., Appellants, v. RUMSEY & SIKEMEIER COMPANY, Garnishee; HUBART DU PUY et al., Respondents.

St. Louis Court of Appeals, November 20, 1900.

1. **Practice, Appellate: BILL OF EXCEPTIONS: AMENDMENT.** Where it appears from the bill of exceptions that the clerk was directed to insert therein the testimony of a witness, which had been written out by the court stenographer, and it further appears that the bill of exceptions was approved with this direction therein by the court and counsel for both parties, and it also appears from the abstract that appellants have printed said testimony as if it had been inserted in the bill of exceptions, the record was clearly amendable in the circuit court, and having before us the necessary elements for perfecting it, the appellate court will treat the amendment as made in the appellate court, without going through "the bare and meaningless formality of sending the case back to circuit court for that purpose."

2. **Account, Definition of: TRUST FUND: ASSIGNMENT: MONEY IN HANDS OF GARNISHEE.** The pleadings and evidence in the case at bar, show that the fund in controversy was the proceeds of sales of goods consigned by the common debtor to its agent or bailee upon commission, it was therefore a trust fund in the form of cash held by such bailees for the benefit of their principal, after the deduction of the commission earned by the sale of the goods.

3. ———: ———: ———: ———. And it did not constitute a book account in the legal acceptation of that term, nor was it a matter of account at all until the excision of the factor's commission.

4. **Book Account.** A book account is plainly applicable to the charges of merchants against purchasers or ordinary debtors, and does not include mere choses in action arising against bailees or factors upon sales of property for a stipulated compensation to such agents.

Morris v. DuPuy.

Appeal from the St. Louis City Circuit Court.—*Hon. Franklin Ferris,* Judge.

REVERSED AND REMANDED.

*Joseph Wheless* for appellants.

(1) The fatal errors patent in this record are "Thick as th' autumnal leaves that strew the brooks in Valombrosa;" but they may be assigned *seriatim* somewhat in the order of their egregiousness as follows: (2) The court erred in holding that, under the facts the case and the law applicable thereto, interpleaders were entitled to any part of the property attached in the hands of the Rumsey & Sikemeier Company. The agreed statement of facts admits that this property was rubber goods sent by the defendant to the garnishee on consignment to be sold on account of defendants, on commission. The power of attorney and the so-called assignment purport, in terms, to include and convey only "all accounts, bills receivable, notes and commercial paper and money in bank." The notice and demand from the interpleaders to the garnishee, on September 20, was of the "assignment of an account against you." The personal property, chattels, in this case, rubber goods and their proceeds, held on consignment, is not included within the language or meaning of the power of attorney and assignment, and does not pass thereby. The identical parallel of this case was thus adjudicated by this court in an opinion by Presiding Judge Bland, with the full concurrence of Judges Biggs and Bond. It was this case over again, in all the facts material to this point. Plaintiff Stieglitz brought attachment against defendant Rosenberg, and garnished the O. J. Lewis Mercantile Company, and Julius Gates interpleaded. Interpleader claimed under

a chattel deed of trust conveying a certain stock of goods, fix-
tures, etc., in St. Louis, and also "all book accounts, bills re-
ceivable and evidences of debt for goods sold out of the store."
The garnishee's answer showed that "it had in its possession
property of the defendant, which it had sold for $1,131," and
that after deducting advances, "commissions for selling the
property," etc., there remained $319, which it paid into court
and was discharged. The evidence showed that it was de-
fendant's "custom to send goods (clothing) to the O. J. Lewis
Mercantile Co., for sale, and that the company would make
advances on his goods, sell them, take out commissions and
pay over balances to him." The court said: "The sole
question for review is whether the deed of trust includes the
funds attached in the hands of the garnishee."Stieglitz v.
Mercantile Co., 76 Mo. App. 275; Peet v. Spencer, 90 Mo.
384.

*Ashley Cabell* and *H. A. Loevy* for respondents.

(1) "The fatal errors patent in this record" may, in
the conception of appellants' learned counsel, be "thick as
th' autumnal leaves." His points are, at all events, as life-
less as those leaves and like them, of no value. But, never-
theless, it is our duty and the court's to wade through his pile
of dead leaves. In the case at bar the account assigned arises
out of the contract of bailment and also out of the fiduciary
or trust relationship between assignor and garnishee. (2)
It must be evident then that as the broad term "account" is
used in the case at bar, and not the limited term "book ac-
count," the ruling in the Stieglits case is not adverse to re-
spondents. (3) Appellants try to defeat interpleader's right by
the rule declared by this court in Stieglitz v. Mercantile Co.,
76 Mo. App. 275. There is, however, a vast difference between

this case and the Stieglitz case.    In this case all accounts were assigned.    In the Stieglitz case the assignment was expressly restricted to all book accounts.    We contend there is a vast difference between an "account" and a "book account."    In the Stieglitz case your Honors hold that the relationship between Rosenberg (the defendant attached) and the O. J. Lewis Company (the garnishee) being that of bailor and bailee, and not that of debtor and creditor, and the goods delivered by Rosenberg (defendant) to Lewis Mercantile Company (garnishee) not being goods sold outright but goods to be sold by the latter on commission, the relationship of the mercantile company to Rosenberg was one of trust, not that of a debtor, and that the proceeds of the sale of goods was not a sum to be charged to the Lewis Mercantile Company, until after a settlement and deduction of commission, and hence, was not a matter of book account, and did not pass to the interpleader by the use of the term "book account" in the chattel deed of trust.    (4)    There are a number of definitions of the term "account."    In 1 Am. and Eng. Ency. of Law (2 Ed.), p. 434, the definition is "a detailed statement in the nature of debit and credit arising out of contract or some fiduciary relation."    In McWilliams v. Allen, 45 Mo. 573, an account is defined to be "a detailed statement in the nature of debit and credit arising out of contract or some fiduciary relation."    In Mill Co. v. Allison, 138 Mo. 55, and Ice Co. v. Tamm, 138 Mo. 390, this language is approved.    In Ittner v. Ass'n, 97 Mo. 567, the court uses the same language.

BOND, J.—On the ninth of September, 1898, plaintiffs brought an attachment suit against defendant, a Pennsylvania corporation, upon certain notes executed by it, aggregating $4,708.25.    On the same day writs of attachment

issued and were served by attaching all the property, effects and credits of the defendant in the hands of Rumsey & Sikemeier Company, a corporation in St. Louis, and by summoning it as garnishee. The attachment against defendant was sustained and the case went to judgment against it. Interrogatories were filed, to which the garnishee answered in substance, that the time of the service of garnishment it had in hand $639.65 as the moneys of the defendant in the attachment suit, being the proceeds of rubber goods held on consignment for sale, from which proceeds the garnishee was entitled to a commission of five per cent, which when deducted from sales theretofore made, left the said balance of $639.65. The garnishee admitted that it had also other property of said defendant to be sold on commissions, but which had not been sold at that time, specifying the same. The garnishee further answered that it had been advised that the attachment defendant "had assigned $553.70 of its account against said garnishee to third parties." Thereupon plaintiffs filed a motion requiring such assignees to interplead. Upon an order of court to that effect the interpleaders herein interpleaded for "the cash" in the hands of said garnishee, alleging that the same was on the third of September, 1898, the property of the attachment defendant, who on that day sold and assigned it to the interpleaders, wherefore they asked the court to award to them the $639.65 in the hands of the garnishee. To this interplea plaintiffs answered denying the validity of the assignment therein set up, and alleging that it was fraudulent. This answer was met by a general denial on the part of the interpleaders. There was an agreed statement of facts which showed that the interpleaders were creditors of the defendant in the attachment in a large sum evidenced by a bond and mortgage upon its plant in Pennsylvania, which had been foreclosed, yielding only $325, which

was consumed in costs and left nothing to be applied to the judgment on the bond entered in favor of said interpleaders against the attachment defendant, under the authority of a power of attorney on the thirteenth of August, 1895. The agreed statement of facts further showed that in pursuance of a certain power of attorney executed by said attachment defendant to its attorneys in fact, an assignment was made on the third of September, 1898, to said interpleaders *"of all accounts, bills receivable, notes and commercial paper belonging to said attachment defendant and also all cash that it may have in bank, as security for the payment of the debt due said interpleaders."* The agreed statement of facts further showed that on the twentieth of September, 1898, the garnishee was informed in writing by the said interpleaders that the defendant had assigned its account to them amounting to $553.70 against such garnishee, and requesting said garnishee to pay the sum to said interpleaders. It was further stipulated that, while $553.70 was the amount claimed by the interpleaders in said notice to the garnishee, such limitation of their claim should not prevent them from claiming the entire amount of cash in the hands of said garnishee, they making no claim, however, to any of the goods in the hands of such garnishee, and conceding that their only right or title to such money was that derivable from the aforesaid assignment to them on the third of September, 1898. The agreed statement of facts also contained the following clause:

"6th. It is further stipulated and agreed that the only matter in controversy in this litigation is the amount of cash in the hands of the Rumsey & Sikemeier Co., the above named garnishee, on the said third day of September, 1898, and does not include unsold merchandise and goods then or now in the hands of the said garnishee on commission."

It was finally agreed that either party might introduce

oral testimony of other facts not contained in the agreed statement, in pursuance of which interpleaders introduced a Pennsylvania attorney as a legal expert upon the laws of that state, and also called William E. Lucas, a bookkeeper of the garnishee, who testified as to the balance due the attachment defendant at the time of the service of the garnishment, and as to the habit of the garnishee to make monthly statements and remittances of the proceeds of the sales of goods consigned to it.   The cause was submitted to the court without a jury and judgment rendered in favor of the interpleaders, from which plaintiffs prosecuted this appeal.

I.   It is urged by respondents that the testimony of Lucas should be stricken out of the abstract (the appeal in this case having been taken upon a certificate and abstract), because it was not written out in full in the bill of exceptions when the same was signed in the lower court.   In support of this motion respondents filed in this court the original bill of exceptions, and also the testimony of said Lucas as written out by the court stenographer.   It appears from the bill of exceptions that the clerk was directed to insert therein the testimony so written out.   It further appears that the bill of exceptions was approved with this direction therein by the court and counsel for both parties, and it also appears from the abstract that appellants have printed said testimony as if it had been inserted in the bill of exceptions.   Under this state of the facts the record was clearly amendable in the circuit court, and having before us the necessary elements for perfecting it, we will treat the amendment as made here, without going through "the bare and meaningless formality of sending the case back for that purpose."   We will therefore regard the evidence of Lucas as properly within the abstract filed in this court.   Darier v. Darier, 58 Mo. loc. cit. 233, 234; Baker v. Railroad, 122 Mo. loc. cit. 547.

II.   The determining question in this case is the effect of the language of the assignment to them, pleaded by the interpleaders, as the basis of their right to the money attached in the hands of the garnishee.   The terms of the assignment descriptive of the property transferred are, "all accounts, bills receivable, notes and commercial paper and also all cash it (the assignor) may have in bank."   Clearly the fund in dispute is not embraced in any of these descriptive words, unless it is covered by the terms "all accounts," for it was not evidenced by any bill receivable, note or commercial paper, neither was it "cash *in bank*."   It must therefore be held either that it passed under the terms "all accounts," or it did not pass under the assignment relied upon by the interpleaders in this action.   The pleadings and evidence in this case show that the fund in controversy was the proceeds of sales of goods consigned by the common debtor to its agent or bailee in St. Louis upon commission.   It was therefore a trust fund in the form of cash held by such bailees for the benefit of their principal, after the deduction of the commissions earned by the sale of the goods.   It did not constitute a book account in the legal acceptation of that term (Stieglitz v. Mercantile Company, 76 Mo. App. 275) ; nor was it a matter of account at all until the excision of the factor's commission.   After this was done it became a chose in action in favor of the owner of the goods, entitling such owner to recover the residue of the price of the goods, if the factor omitted to forward the same after a deduction of his commissions.   We are of the opinion that this chose in action was not embraced by the term "all accounts" used in the assignment to the interpleaders in this action, but that those terms were intended to refer to and include accounts which accrued to the attachment defendant from its general debtors and not mere rights of action arising against its bailees or

factors upon sales of property for a stipulated compensation to such agents.   We do not think the responsibilities thus arising are properly embraced with the mercantile sense of an account, which seems to us to be plainly applicable to the charges of merchants against purchasers or ordinary debtors. That this was the actual meaning given the terms in the assignment, is further apparent from the fact that it employs other specific words to denote the disposition of the "cash" belonging to the assignor, and only transfers so much thereof as was at the time *"in bank,"* entirely excluding from its operations any "cash" belonging to the assignor which was deposited or held elsewhere.   The fund in dispute is, as alleged in the interplea, simply an amount of "cash" which belonged to the assignor, but was held by its agent.   It was therefore, by the plain letter of the assignment excepted from its conveyance.   This conclusion disposes of the case and renders it wholly unnecessary to decide other questions presented in the briefs.   The result is that the judgment is reversed and the cause remanded with directions to the trial court to enter judgment in favor of plaintiffs against the interpleaders for the money admitted by the garnishee to have been in its possession at the time of the garnishment.   All concur; Judge *Biggs* in result.